**In re PREBLE.**
Patent Appeal No. 2365.

Court of Customs and Patent Appeals.
Jan. 12, 1931.

Charles W. McDermott, of Boston, Mass. (Chas. E. Riordon, of Washington, D. C., of counsel), for appellant.

1008

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals affirming the decision of the Examiner denying claims 1 to 4, and 8, in appellant's application for an alleged invention relating to a spraying apparatus for applying liquid coating material to the internal surfaces of tubes for boilers, fuel economizers, feed water heaters, and other like articles.

The claims read as follows:

"1. An apparatus or tool for applying coating having, in combination, means to supply coating material, means to subject the same to the action of a motive agent thereby effecting the discharge of the coating material in the general direction of the extended longitudinal axis of the tool, and means for forming an air curtain normal to the extended longitudinal axis of the tool for arresting the advance of the discharged coating material and belling it outwardly in a direction substantially normal to the extended longitudinal axis of the tool.

"2. A tool for applying coating having, in combination, a body portion provided with an outer nozzle, means for discharging a frusto-conical cloud of coating material through the outer nozzle, and supplemental means independent of the outer nozzle spaced a substantial distance both from the smaller base of the discharged coating material and the outer nozzle for changing the shape of the discharged coating material.

"3. A tool for applying coating having, in combination, a body portion provided with an outer nozzle, means for discharging a frusto-conical cloud of coating material through the outer nozzle in the general direction of the extended longitudinal axis of the tool, and supplemental means independent of the outer nozzle spaced a substantial distance both from the smaller base of the discharged coating material and the outer nozzle for changing both the direction and the shape of the discharged coating material.

"4. A tool for applying coating having, in combination, means for discharging the coating material at an inclination to the longitudinal axis of the tool, and supplemental means for turning the discharged coating material outwardly into a plane normal to and away from the extended longitudinal axis of the tool.

"8. A tool for applying coating having, in combination, means for discharging coating material in an atomized condition, and supplemental means radiating from the longitudinal axis of the tool for further atomizing the discharged material."

The references are: Dickens, 517,544, April 3, 1894; Spoon, 599,202, February 15, 1898; Perut (French), 472,003, November 19, 1914.

In appellant's apparatus a liquid coating is supplied under pressure through an opening to a space between an inner and outer nozzle. The inner nozzle has a closed end and is provided with two sets of circular apertures, so arranged that, when the motive agent—compressed air—is passed through them, the liquid coating is atomized and forced through circular apertures in the outer nozzle.

The patent to Dickens relates to a lawn sprinkler adapted to distribute a stream of water over a limited area in the form of spray. It is provided with a nozzle having a closed end and two sets of apertures so arranged that the water is broken up into fine particles by the motive agent—the pressure in the water pipe to which the sprinkler is attached.

The patent to Spoon relates to an apparatus for cooling liquids. It is provided with inner and outer nozzles, each provided with a series of apertures. The inner nozzle is secured to one end of a liquid supply pipe through which flows the heated liquid. The outer nozzle, according to the specification and drawings, surrounds the inner nozzle, and is connected to an outer pipe. The outer pipe surrounds a part of the supply pipe and opens into the outer air. As the liquid is ejected through the openings in the inner nozzle, a suction is created in the outer pipe and the inrushing air atomizes the liquid, in which condition it passes through the aperture in the outer nozzle.

The French patent to Perut relates to an irrigating or sprinkling device. With regard to this reference, the Examiner said: "The French patent to Perut shows an inner air tube with a closed end, having the openings 6 and 8 through which air is forced to change the direction and further atomize the liquid issuing from jets 4 of the outer nozzle." He then said:

"Claims 1 to 4, 8, * ° * in different

ways, generally call for a combination of an outer nozzle from which a frusto-conical liquid spray issues, and an inner nozzle from which air is ejected to change the shape of the frusto-conical liquid spray; the relation of the positions of the two nozzles as recited in claims 2, 3, read clearly on Perut, while the other claims, being broader, read also on the same patent. * * *

"Claims 4 and 8 call for means for discharging coating material,· and supplemental means for turning the discharged material 'outwardly into a plane normal and away from the longitudinal axis of the tool.' Dickens clearly shows the construction reading on these claims.

"Applicant argues that none of the references show (a) means to supply coating material; (b) means to subject the same to the action of a motive agent; (c) means for changing the shape of the sprayed material (claim 1). Since the liquid in the patents is forced by some means through the nozzle, and the claims do not positively recite that means (b) is independent of means (a) the claims reciting these features read on the patents."

In sustaining the decision of the Examiner, the Board of Appeals held that the involved claims were sufficiently broad to read on the French patent to Perut, and, with reference to the contention of counsel for appellant that the patent to Perut showed only two of the three means referred to in the involved claims, said: " * * * Whether Perut relies upon suction of the issuing air jets to effect discharge of the liquid, as appellant contends, or supplies the liquid with a head for forcing it out, is believed immaterial, since there would be no invention in supplying the liquid with a certain head acting as a 'motive agent,' as in the ordinary sprinkler."

The first contention presented by counsel for appellant is that none of the references

disclose any means for discharging a liquid in an atomized condition.

It is admitted that they disclose means for discharging liquids in the form of spray. It is argued, however, that there is a substantial difference in meaning between the terms "spray" and "atomize."

The words "spray" and "atomize" are defined in Funk & Wagnalls New Standard Dictionary as follows:

"Spray, v. I. t. To throw or scatter in minute particles, as liquids: sometimes done by an atomizer. 2. To treat, medicinally or otherwise, with a liquid in the form of spray; apply spray to, especially with an atomizer; as, to spray a sore throat or a tree. II. i. To disperse a liquid in the form of spray."

"Spray, n. 1. Water or other liquid dispersed in particles, as by the wind or by force of impact; as, spray from waves; the spray of a waterfall. 2. Specif., liquid applied in extremely fine particles by means of an atomizer, as for disinfecting, for treatment of diseased parts, or as a fungicide or insecticide. 3. An instrument for spraying; sprayer; atomizer. * * * "

"Atomize, vt. To reduce to atoms or atom-like particles; pulverize; spray. * * * "

In view of the quoted definitions, this issue requires no further discussion.

It is next argued by counsel for appellant that in the French patent to Perut the water is discharged from the nozzle in a stream and is atomized, by compressed air, after it is discharged into the atmosphere. A somewhat similar argument is presented with regard to the disclosure in the Dickens patent.

We deem it unnecessary to discuss these and other arguments advanced by counsel for appellant, as they have been fully, and, in our opinion, properly answered in the concurring opinions of the Patent Office tribunals.

The decision is affirmed.

Affirmed.